UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DWAYNE JOHNSON,

       Petitioner,

v.                        Case No: 2:12-cv-99-FtM-29DNF

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

       Respondents.

_____

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Dwayne Johnson ("Petitioner") who is presently confined at the Taylor Correctional Institution Annex in Perry, Florida (Doc. 1). Petitioner, proceeding *pro* se, attacks the convictions and sentences entered by the Twentieth Judicial Circuit Court in Collier County, Florida, for battery on a law enforcement officer and escape. Id. Respondents filed a response to the petition, and Petitioner filed a reply to the response (Doc. 18; Doc. 26).

Petitioner raises four claims in his petition. He asserts that: (1) trial counsel was ineffective for failing to strike a potentially biased juror; (2) trial counsel was ineffective for filing to request a jury instruction on the crime of attempted escape; (3) trial counsel was ineffective for failing to request a special jury instruction on the definition of a valid arrest;

and (4) the post-conviction court erred by failing to hold an evidentiary hearing on several of Petitioner's ineffective assistance claims (Doc. 1 at 7-10).

Upon due consideration of the petition, the responses, the replies, and the state court record, the Court concludes that the petition must be denied. Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted. <u>See</u> Rule 8, Rules Governing Habeas Corpus Petitions under Section 2254.

## I.   <u>Background and Procedural History</u>

On March 23, 2001, Petitioner was charged by information with escape from custody and battery on a law enforcement officer (Vol. 1, Ex. 1 at 9).[1]  The alleged escape and battery occurred in the courtroom after Petitioner was found guilty of robbery in an unrelated case. <u>Id.</u> at 9.  After being found guilty of robbery, Petitioner was remanded into the custody of the Sheriff of Collier County pending a presentence investigation, and as he was taken to be fingerprinted, Petitioner attempted to leave the courtroom. <u>Id.</u>  After a jury trial on the escape and battery charges, Petitioner was found guilty as charged. <u>Id.</u> at 107-09. Petitioner was sentenced as a violent career criminal to a thirty

---

[1] The volumes and exhibits referenced in this case refer to those filed by Respondents on June 14, 2012 (Doc. 10).  References to the trial transcript, located in volume three, are cited as (T. at __).

year minimum mandatory term of imprisonment on the escape charge. He was sentenced to a fifteen year sentence on the battery charge. The sentences were to run concurrently with each other and consecutively to a thirty year sentence for robbery.  Id. at 108-118.  Petitioner's convictions and sentences were *per curiam* affirmed on direct appeal (Ex. 4); Johnson v. State, 865 So. 2d 495 (Fla. 2d DCA 2003).

Petitioner filed a motion for post-conviction relief and several amended motions pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (collectively, "Rule 3.850 motion") (Ex. 6). The post-conviction court held an evidentiary hearing on five of the grounds raised in the Rule 3.850 motion and summarily denied the remaining claims (Ex. 9).  After the evidentiary hearing, all of Petitioner's Rule 3.850 claims were denied (Ex. 10).  The denial was *per curiam* affirmed on October 21, 2011 (Ex. 14); Johnson v. State, 73 So. 3d 768 (Fla. 2d DCA 2011).

On December 5, 2005, Petitioner filed a motion to correct illegal sentence pursuant to Rule 3.800 of the Florida Rules of Criminal Procedure (Ex. 16).  The trial court denied the motion, but the Second District Court of Appeal issued a written opinion reversing in part and affirming in part (Ex. 21); Johnson v. State, 977 So. 2d 661, 662 (Fla. 2d DCA 2008).  The appellate court noted that battery on a law enforcement officer was not a forcible felony for qualification as a violent career criminal and reversed for

the trial court to vacate the career criminal sentence on Petitioner's battery conviction.  <u>Id.</u>  Petitioner sought rehearing which was denied (Ex. 22; Ex. 25).

Petitioner filed the instant habeas petition on February 27, 2012 (Doc. 1).  Respondents agree that the petition was timely filed (Doc. 8 at 5).

## II.  <u>Governing Legal Principles</u>

### A.  **Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")**

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or

erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155. Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786-787 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (dictum). When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g. Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013); Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

**B.   Standard for Ineffective Assistance of Counsel**

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.   466 U.S. 668, 687-88 (1984).   A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.   Id.   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13, citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."   Id. at 689.   Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]"   Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny.   Roe

v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

**C.    Exhaustion and Procedural Default**

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)
> >     (i)  there is an absence of available State corrective process; or

(ii) circumstances exist that render
such process ineffective
to protect the rights of
the applicant.

28 U.S.C. § 2254(b)(1) (2012).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Conner, 404 U.S. 270, 275-76 (1971)).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).  In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court.  Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).  Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural

grounds under state law.  Coleman, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court.  Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted).  To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it

is more likely than not that no reasonable juror would have convicted him" of the underlying offense.  Schlup v. Delo, 513 U.S. 298, 327 (1995).  In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial."  Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

## III. **Analysis**

### A. **Claim One**

Petitioner asserts that trial counsel was ineffective for failing to strike a potentially biased juror from the jury pool (Doc. 1 at 5).  Specifically, Petitioner alleges that Juror Charles Holliday was biased because he admitted that he (Holliday) had an inclination to believe that law enforcement officers are truthful about everything.  Id.

Petitioner raised this issue in his Rule 3.850 motion, and the post-conviction court ordered an evidentiary hearing on the claim (Ex. 9).  After the hearing, the claim was denied:

> Defendant alleges his counsel was ineffective for failing to strike juror Charles Holliday. The State argued at the hearing that Defendant's objection to Juror Holliday is based on the relationship between the juror and his friend who is a law enforcement officer. This relationship, the State asserted, is not enough on its own to require that the juror be stricken for cause.
>
> The record reflects that Juror Holliday's friendship with a law enforcement officer and his ability to consider the credibility of the

testifying officers was addressed at voir dire. Juror Holliday stated that his "best friend from the marines is a Lee County deputy" and that he would be inclined to believe his friend because the friend is "pretty straightforward about everything." When pressed if he would be able to judge the credibility of the officers who would be testifying against Defendant despite his inclination to believe his friend, Juror Holliday responded that he thought he could.

At the evidentiary hearing, Defendant only testified that counsel did not discuss the jury selection with Defendant and that counsel did not ask for Defendant's consent to not strike Juror Holliday. Defendant bears the burden at an evidentiary hearing of demonstrating how counsel was deficient within the meaning of Strickland, and how the outcome of trial would have been different. Defendant has failed to meet his burden. [This claim], therefore, is DENIED.

(Ex. 10 at 749-50) (citations to record omitted). Petitioner appealed the denial of this claim, but in his brief on appeal, he argued only that Holliday's equivocation in his answers to the trial court justified a dismissal for cause (Ex. 11 at 22-30).[2] Petitioner does not explain how the state court's adjudication of this claim was contrary to, or an unreasonable application of,

---

[2] Respondents now assert that this claim is unexhausted because Petitioner did not appeal the precise issue raised in his Rule 3.850 (Doc. 8 at 9-10). This Court does not agree. In his Rule 3.850 motion, Petitioner argued, as he did on direct appeal, that "the law was clear that such an equivocal response does not erase a doubt as to a juror's impartiality and a cause challenge must be granted." (Ex. 6 at 7). The fact that Petitioner has not addressed or refuted the post-conviction court's conclusion that Petitioner had not met his burden under Strickland goes to the merits of Petitioner's claim, not to its exhaustion.

<u>Strickland</u>.   Indeed, a review of the record supports the state courts' denial of this claim.

At issue is the following exchange during voir dire:

STATE:    Does anybody here have any dealings with law enforcement officers which would kind of color the way that you might view their testimony? Anybody who said yes raise your hand.  Sometimes that's easier for me.  Mr. Holliday.

HOLLIDAY: My best friend from the marines is a Lee County deputy.

Q.        Would you agree, though, that your friend is a human being?

A.        Yes.

Q.        So you could believe or disbelieve the officers based on their testimony here today and what you see here today?

A.        He's pretty straightforward about everything, you know, so I believe they're truthful about everything.

Q.        But that's your friend in Lee County?

A.        Right.

Q.        Do you think you could judge these officers independent of your friend and judge their credibility based on what you see in here today?

A.        I assume so because I don't know what I'm going to see.

Q.        Okay, That's a fair statement.  You don't know what you're going to see. But let's say, for example, you see something that may influence their

> credibility either one way or
> another, either make them more
> credible or less credible.   You
> would be able to take that into
> consideration in making your
> decision?

A.      Yes.

Q.      So you could judge their testimony
        just the same as you could judge
        anybody else's?

A.      Yes, I believe so.

(T. at 59-61).   Petitioner asserts that counsel was ineffective

for failing to remove Holliday as a juror because of his

"equivocation" on the issue of whether he would be able to

objectively evaluate a law enforcement officer's testimony (Ex. 6

at 6-7).

The Sixth Amendment guarantees the accused a trial by an

impartial jury in federal criminal prosecutions.   U.S. Const.

amend VI.   Because "trial by jury in criminal cases is fundamental

to the American scheme of justice," the Due Process Clause of the

Fourteenth Amendment guarantees the same right to the accused in

state criminal prosecutions.   Duncan v. Louisiana, 391 U.S. 145,

149 (1968).   As with federal law, the test for determining juror

competency in the Florida courts is "whether the juror can lay

aside any bias or prejudice and render his verdict solely upon the

evidence presented and the instructions on the law given to him by

the court."   Lusk v. State, 446 So. 2d 1038, 1041 (Fla. 1984).

The Eleventh Circuit has cautioned that courts applying Strickland must "defer to trial counsel's performance and eschew the distorting effects of hindsight" when interpreting a prospective juror's statements and trial counsel's decision whether or not to leave that person on the jury. Harvey v. Warden, Union Correctional Institution, 629 F.3d 1228, 1247 (11th Cir. 2011); see also Babb v. Crosby, 197 F. App'x 885, 887 (11th Cir. 2006) ("the Supreme Court has not concluded that a lawyer who leaves an arguably biased juror on a jury is per se ineffective"). Moreover, "[a]ssessing jurors during voir dire also requires an evaluation of demeanor and credibility. Review of counsel's performance is highly deferential in any case, but the case for deference is even greater when counsel is evaluating credibility." Bell v. United States, 351 F. App'x 357, 360 (11th Cir. 2009) (internal citation omitted).

In the instant case, Juror Holliday stated that he would take into consideration anything that would influence a law enforcement officer's credibility and that he believed he could evaluate their credibility the same as any other witness' credibility. Petitioner has adduced no evidence other than the transcript of the jury selection proceeding to support his claim that trial counsel had a reasonable basis for striking Holliday from the jury pool. Given Holliday's statement that he could objectively evaluate the credibility of witnesses, Petitioner has not shown

that no competent counsel would have failed to use a peremptory challenge to strike Holliday from the jury panel. See Chandler v. United States, 218 F.3d 1305, 1314-15 (11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").

Likewise, Petitioner has failed to present evidence of bias. Because empaneled jurors are presumed impartial, Smith v. Phillips, 455 U.S. 209, 215 (1982), to satisfy Strickland's prejudice prong, Petitioner must show that the jury selection process produced a juror that was actually biased against him. Rogers v. McMullen, 673 F.2d 1185, 1189 (11th Cir. 1982) (defendant's Sixth Amendment right to a fair and impartial jury was not violated absent a showing that a jury member hearing the case was actually biased against him). As noted by the post-conviction court, Petitioner presented no evidence at his evidentiary hearing showing that Holliday was actually biased. Rather, Petitioner merely testified that had counsel discussed the issue with him, he would have objected to Holliday and asked counsel to strike him from the jury pool (Ex. 9 at 7-8).[3] Petitioner admitted that he did not ask defense counsel to strike

---

[3] Defense counsel did not testify at the evidentiary hearing.

Holliday. <u>Id.</u>   Other than speculating in the instant petition that Holliday may have been biased because of his alleged equivocation during voir dire, Petitioner does not show that a biased juror actually sat on his jury. See <u>Phillips</u>, 455 U.S. at 215-17 (recognizing that the remedy in the face of allegations of juror partiality is a hearing in which the defendant must prove actual bias).

Petitioner's unsupported and speculative assertions do not entitle him to habeas relief on this claim.   See <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).   Petitioner fails to establish that the state post-conviction court either unreasonably applied <u>Strickland</u> or unreasonably determined the facts in rejecting this claim of ineffective assistance of counsel. Claim One is denied.

### B.   <u>Claim Two</u>

Petitioner asserts that counsel was ineffective for failing to request a jury instruction on the crime of "attempted escape." (Doc. 1 at 7).   Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (Ex. 6 at 184-88).   The post-conviction court denied the claim on the ground that there is

simply no crime of "attempted escape," and counsel could not be ineffective for failing to request an instruction on such (Ex. 10 at 750-51).[4]   Petitioner did not challenge the post-conviction court's conclusion on appeal.

Respondent argues that Petitioner has procedurally defaulted this claim because, while he raised it in his Rule 3.850 motion and an evidentiary hearing was held, he did not raise it on appeal from the denial of his Rule 3.850 motion (Doc. 8 at 11). Respondent is correct.  On appeal of the denial of his Rule 3.850 motion, Petitioner challenged the post-conviction court's ruling on only three of the twelve claims he raised in his Rule 3.850 motion (Ex. 11).  Pursuant to Rule 9.141(b)(3) of the Florida Rules of Appellate Procedure, failure to fully brief and argue points on appeal after receiving an evidentiary hearing on a Rule 3.850 motion constitutes a waiver of those claims.  See e.g.

---

[4] Florida Statute § 944.40 provides that "any prisoner confined in any prison, jail, private correctional facility, road camp, or other penal institution . . . or being transported to or from a place of confinement who escapes **or attempts to escape from such confinement** commits a felony of the second degree[.]" (2001) (emphasis added).  Accordingly, "attempted escape" under Florida law is encompassed in the definition of escape and is not a lesser included offense of that crime.  Therefore, even if review of this claim was not procedurally barred, the post-conviction court correctly concluded that counsel could not be ineffective for failing to request a jury instruction on a crime that did not exist.  Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).

Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979) (Florida prisoner must appeal denial of Rule 3.850 relief to exhaust remedies);[5] Cortes v. Gladish, 216 F. App'x 897, 899-900 (11th Cir. 2007) (recognizing that when a petitioner receives an evidentiary hearing on his Rule 3.850 motion, his failure to address issues in his appellate brief would constitute a waiver of those claims); Coolen v. State, 696 So. 2d 738, 742 n.2 (Fla. 1997) (Failure to fully brief and argue points on appeal constitutes a waiver of these claims.).

The "one complete round" exhaustion requirement set forth in O'Sullivan v. Boerckel, 526 U.S. 838 (1999), applies to post-conviction review as well; a prisoner must appeal the denial of post-conviction relief in order to properly exhaust state remedies. LeCroy v. Secretary, Florida Dep't of Corr., 421 F.3d 1237, 1261 (11th Cir. 2005) (as Florida prisoner failed to properly exhaust claim on direct appeal or Rule 3.850 appeal, it was procedurally barred (citing Coleman)); Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) ("Boerckel applies to the state collateral review process as well as the direct appeal process"); Pruitt v. Jones, 348 F.3d 1355, 1359 (11th Cir. 2003) ("A § 2254 habeas petition 'shall not be deemed to have exhausted the remedies

---

[5] The Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

available in the courts of the State . . . if he has the right under the law of the State, to raise, by any available procedure, the question presented.'") (citing 28 U.S.C. § 2254(c)).  "A petitioner who fails to exhaust his claim is procedurally barred from pursuing that claim on habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default." Lucas v. Sec'y Dep't of Corr., 682 F.3d 1342, 1353 (11th Cir. 2012).  Petitioner has shown neither.  Rather, he argues only that collateral counsel was ineffective and that Martinez v. Ryan, 132 S. Ct. 1309 (2012), stands for the proposition that any deficiencies in his prior cases should be excused as a result of collateral counsel's failings (Doc. 26 at 2).

To the extent Petitioner now argues that his Rule 3.850 collateral counsel's ineffectiveness excuses his failure to exhaust these claims, such argument is foreclosed by the Supreme Court's decisions in Coleman v. Thompson and Martinez v. Ryan.  In Coleman, the petitioner had defaulted his claim because he failed to bring a timely appeal of the denial of his state habeas petition.  Coleman, 501 U.S. at 727.  The petitioner argued that the cause for his default was his appellate counsel's failure to timely file the appeal.  Id. at 752.  The Coleman court concluded that such a procedural default may be excused only if the "cause" under the cause and prejudice test was something *external* to the

petitioner that could not fairly be attributed to him.  Id. at 753 ("As between the State and the petitioner, it is the petitioner who must bear the burden of a failure to follow state procedural rules.   In the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation[.]").   The Court recognized that attorney error could be seen as an external factor only if it violated the Sixth Amendment right to counsel.  Id. at 754.   However, because a defendant has no right to counsel in state collateral proceedings after exhaustion of direct appellate review, "it would defy logic for us to hold that [petitioner] had a right to counsel to appeal a state collateral determination of his claims of trial error."   Id. at 756-57.   Accordingly, appellate counsel's failure to timely file the appeal did not excuse the petitioner's procedural default.   Likewise, Petitioner's collateral counsel's failure to compel the attendance of trial counsel at the evidentiary hearing or to properly question Petitioner at the hearing does not excuse Petitioner's procedural default of this claim (Doc. 26 at 2).

In Martinez, the Supreme Court relaxed the Coleman cause-and-prejudice standard to excuse procedural default in a narrow category of cases.   Specifically, the Supreme Court determined that the procedural default of "an ineffective-assistance claim" by post-conviction counsel in an initial-review state-court

collateral proceeding should be excused under a more lenient standard than cause and prejudice under <u>Coleman</u>.  <u>Martinez</u>, 132 S. Ct. at 1318.  However, the Court in <u>Martinez</u> was careful to restrict its holding to ineffective assistance in the *initial-review* collateral proceeding in state court.  The Court wrote:

> The rule of <u>Coleman</u> governs in all but the limited circumstances recognized here.  ***The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings***, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.  It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

<u>Id.</u> at 1320 (emphasis added) (internal citations omitted).  In the instant case, it is only the <u>appeal</u> of an initial review collateral proceeding that was defaulted.  Therefore, the <u>Martinez</u> exception does not apply.  Broadening the rule to excuse Petitioner's failure to exhaust in this case would ignore the Supreme Court's explicit and emphatic statement that the <u>Martinez</u> rule creates only a narrow exception to <u>Coleman</u>'s general rule.  <u>See</u> <u>Martinez</u>, 132 S. Ct. at 1315 (referring to a "narrow exception"); <u>id.</u> at 1320 (referring to the "limited circumstances" in which its ruling applied and discussing the "limited nature" of the rule); <u>Trevino</u>

v. Thaler, 133 S. Ct. 1911, 1921 (2013) (applying Martinez's "narrow exception").

Petitioner has made none of the requisite showings to excuse the default, which bars federal habeas review of Claim Two. Coleman, 501 U.S. at 734–35. Accordingly, Claim Two is dismissed as unexhausted and procedurally barred.

### C.   **Claim Three**

Petitioner asserts that trial counsel was ineffective for failing to request a special jury instruction on the definition of a valid arrest (Doc. 1 at 8). Petitioner raised this issue in his Rule 3.850 motion in which he argued that his defense "was based upon an insufficiency of the state's evidence to show that the defendant knew he had been arrested and/or ordered into custody" at the time he attempted to escape (Ex. 6 at 6). After an evidentiary hearing, the post-conviction court denied this claim on the basis that counsel was not ineffective because the standard jury instruction on escape had been read to the jury and adequately stated the controlling law (Ex. 10 at 749). The post-conviction court also determined that Petitioner could not show prejudice because the issue of whether Petitioner had been placed in custody at the time of his escape attempt "had been decided by the Second District Court of Appeal when it affirmed the final judgment of conviction[.]" Id. The post-conviction court's denial of this claim was affirmed on appeal (Ex. 14); Johnson, 73 So. 3d at 768.

Petitioner does not explain how the post-conviction court's conclusions were contrary to, or an unreasonable application of Strickland. A review of the record supports a conclusion that Petitioner was properly "in custody" during the alleged escape attempt. As a result, Petitioner cannot demonstrate prejudice from the lack of an instruction on this issue.

Testimony was presented at trial from Sergeant Larry White that Petitioner was in the custody of Corporal Wilkinson, and had been for five or ten minutes when Petitioner left custody by "bolt[ing] down this aisle-way here, attempting to escape from the room." (T. at 127-30). Corporal Wilkinson testified that he took Petitioner into custody after he was adjudicated guilty at the conclusion of Petitioner's robbery trial and that Petitioner broke from his custody and headed for the doors to the courtroom (T. at 156-61). Corporal Michael Brady testified that after Corporal Wilkinson took Petitioner into custody, Petitioner ran for the door to the courtroom (T. at 174-75).

At his evidentiary hearing, Petitioner did not argue that he was not "in custody" when he attempted to leave. Rather, he admitted that after the jury returned its verdict of guilty, he was taken by a bailiff for fingerprinting (Ex. 9 at 14-15). He explained to the post-conviction court that he had no intent to escape, but that he "blanked out" after visiting with his family for the last time and being "convicted of a crime that I know I

didn't commit[.]" (Ex. 9 at 13-15, 18).  Petitioner testified that he had no intent to leave the courtroom, but did not testify that he did not realize that he was in custody.  Id. at 18.

Even assuming, *arguendo*, that Petitioner could show prejudice from the lack of a special instruction, he has not shown that no reasonable counsel would have failed to request a special jury instruction on a "valid arrest."  The trial court instructed the jury on escape as follows:

> Before you can find the Defendant guilty of
> escape, the State must prove the following
> three elements beyond a reasonable doubt:  One
> Dwayne Johnson was in the lawful custody — was
> under arrest and in the lawful custody of a
> law enforcement official, two while a
> prisoner, Dwayne Johnson was being transported
> to or from a place of confinement, three
> Dwayne Johnson escaped or attempted to escape
> by leaving from the custody of Collier County
> Sheriff's Deputy Lee Wilkinson, intending to
> avoid lawful confinement.

(T. at 288-89).  Petitioner does not dispute that this is the standard Florida jury instruction on escape.  See Fla. Std. Jury Instr. Crim. 27.1; Fla. Stat. § 944.40.  Although Petitioner now asserts that defense counsel should have asked for an additional instruction defining "valid arrest," he does not provide the court with the instruction he believes counsel should have requested or explain how such an instruction would have been helpful to his

defense.[6]  Under Florida law, the standard jury instructions are presumed correct and are preferred over special instructions. Stephens v. State, 787 So. 2d 747, 755 (Fla. 2001).

Moreover, defense counsel was not unaware of this particular line of defense.  He unsuccessfully argued to the trial court in his motion for a judgment of acquittal that the state had not established the "in custody" element of an escape charge (T. at 225-26).  He also made the following argument to the jury during closing:

> Now, ladies and gentlemen of the jury, the State has to prove beyond and to the exclusion of each and every reasonable doubt that Dwayne was confined in a prison, as a prisoner, on that day.  Now, the evidence is, yes, he went to trial on that case, yes, he was convicted, but you haven't heard any evidence or seen any corroboration that Judge Blackwell on that day ordered him into custody.  The State has that burden to prove that to you, you have no evidence before you as to that.  The only evidence you have regarding Judge Blackwell is his order signed July 27th of 2001.  You don't have – you see that lady right there, the court reporter, you don't have a transcript of what Judge Blackwell ordered that day, all you have are the words of the corrections officers, who I would submit are certainly short of credibility or as we discussed in jury selection, believability.

---

[6] During the evidentiary hearing on this issue, the post-conviction court asked for a copy of the proposed instruction Petitioner believed counsel should have given (Ex. 9 at 29). Petitioner's collateral counsel was unable to provide such.  Id.

(T. at 253).  Despite defense counsel's argument, the jury concluded that Petitioner was in custody and found him guilty of escape (Ex. 1 at 107-09).

In light of clear Florida precedent indicating that "[t]he standard jury instructions are presumed correct and preferred over special instructions" and defense counsel's arguments to the trial court and to the jury on the "in custody" element of an escape charge, Petitioner has not shown that counsel's performance was deficient.  Stephens, 787 So. 2d at 755; Chandler, 218 F.3d at 1314-15.

Claim Three fails to satisfy either prong of Strickland and is denied under 28 U.S.C. § 2254().

**D.  Claim Four**

Petitioner asserts that the trial court erred in denying three of his Rule 3.850 claims without an evidentiary hearing (Doc. 1 at 10).  Specifically, he asserts that an evidentiary hearing should have been held on his claims that: (1) counsel was ineffective for failing to move for a judgment of acquittal; (2) counsel was ineffective for failing to object to the attempted escape language in the jury instructions on the grounds that no overt act was alleged in the information; and (3) counsel was ineffective for failing to move for a judgment of acquittal on the basis that the state's charging document failed to allege an overt act.  Id.  In his brief on appeal of the post-conviction court's denial of these

claims, Petitioner asserts that he "has had no opportunity to present to the court that this was not the product of any strategic trial decision and was, in fact, ineffectiveness.  To deny this claim without an evidentiary hearing was error and [Petitioner] asks that it be remanded on this basis." (Ex. 11 at 35) (citing Wiggins v. State, 933 So. 2d 1224 (Fla. 1st DCA 2006) (error to issue a summary denial and remanded on that basis); McCray v. State, 933 So. 2d 1226 (Fla. 1st DCA 2006) (defendant entitled to evidentiary hearing on claim attorney failed to investigate and call witness when trial court appeared to determine failure to call was a product of trial strategy); Peede v. State, 748 So. 2d 253 (Fla. 1999) (defendant entitled to evidentiary hearing on claims not adequately refuted by the record.).

A prisoner's challenge to the process afforded him in a state post-conviction proceeding does not constitute a cognizable claim for habeas corpus relief.  Rather, such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself.  Carroll v. Sec'y Dep't of Corr., 574 F.3d 1354, 1366 (11th Cir. 2009) (habeas petitioner's claim—that the state court violated his due process rights when it summarily denied his postconviction claim without an evidentiary hearing—did not state a claim on which federal habeas relief could be granted); Anderson v. Sec'y for Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006) (a state court's failure to conduct an

evidentiary hearing on a postconviction motion does not constitute a cognizable claim for federal habeas relief).

Therefore, to the extent that Petitioner seeks relief based on the ground that he did not receive an evidentiary hearing on issues raised in his Rule 3.850 motion, he fails to state a claim cognizable on habeas review, and Claim Four is denied on this basis.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.  <u>Certificate of Appealability</u>[7]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional

---

[7] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." <u>Id.</u>  As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. at 335-36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Dwayne Johnson (Doc. 1) is **DENIED**.

2. This case is **DISMISSED** with prejudice.

3. Petitioner is **DENIED** a certificate of appealability.

4. The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___14th___ day of October, 2014.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Dwayne Johnson
Counsel of Record